Jennifer ASPLIN and Donald J. Leidy,
Plaintiffs-Appellees,

v.

Daniel T. MUELLER,
Defendant-Appellant.

No. 82CA0668.

Colorado Court of Appeals,
Div. II.

Aug. 9, 1984.

Berkowitz, Berkowitz & Brady, Larry W. Berkowitz, S. Morris Lubow, Denver, for plaintiffs-appellees.

Downey Law Firm, P.C., Jeffrey J. Cowman, Denver, for defendant-appellant.

VAN CISE, Judge.

In this assault and battery and outrageous conduct action, judgment was entered on a jury verdict awarding compensatory and exemplary damages to plaintiffs, Jennifer Asplin and Donald J. Leidy. Contending that the trial court deprived him of his constitutional privilege against self-incrimination, defendant, Daniel T. Mueller, appeals. We affirm.

Most of the pertinent facts were stipulated, and the evidence as to facts not stipulated was uncontroverted. Defendant was a Denver police officer. He was required to be armed at all times, whether on

or off duty and whether in or out of uniform. He was specifically authorized to carry a Smith & Wesson .357 model 19 chrome revolver.

On June 23, 1978, defendant attended a luncheon meeting with his lawyer and another police officer. He had two drinks. At that time he was off duty, out of uniform, casually dressed, and armed. At about 2:30 p.m., he was driven by the other policeman to a downtown lot where his car was parked.

Shortly after 5 p.m. on that day, while attempting to exit from Interstate 25, both plaintiffs were struck and injured by a single bullet fired from a passing automobile owned by defendant. The only occupant of that car was a casually dressed man. The gun used had a long shiny barrel.

After the shooting, the plaintiffs followed the car, obtained the license number, and reported to the police. Defendant's Smith & Wesson revolver was seized by investigating officers. After viewing both photographic and in-person lineups, neither plaintiff was able to make a positive identification of defendant as the person who had fired the shot.

Plaintiffs commenced this action, seeking damages from defendant as the alleged assailant. Defendant refused to respond to a number of plaintiffs' interrogatories, requests for admissions, and requests for production of documents, basing his refusal on a claim of privilege against self-incrimination. In an original proceeding, our Supreme Court upheld his right to decline to answer inquiries that might incriminate him. *Mueller v. District Court*, 199 Colo. 430, 610 P.2d 104 (1980).

Shortly before trial, defendant filed a motion in limine, seeking orders (1) prohibiting plaintiffs from calling him to the witness stand, (2) preventing them from requiring him to assert his Fifth Amendment privileges on the stand, and (3) preventing them from commenting in any way on his assertion of his Fifth Amendment rights. The motion was denied.

At trial, over objection of defense counsel, defendant was called by plaintiffs as an adverse witness for cross-examination. In response to questions regarding the shooting incident, defendant declined to answer on the basis of his Fifth Amendment privilege. At the end of the trial, over objection, the following instructions were submitted to the jury:

"The jury is not to decide liability or non-liability of defendant Mueller based solely on his assertion of his Fifth Amendment rights."

"The jury may draw any reasonable inferences from the defendant's refusal to answer any questions on the claim of privilege against self-incrimination (Fifth Amendment)." ·

"The privilege against self incrimination, whether claimed under the Federal or Colorado Constitutions is a personal privilege. It cannot be claimed for the purpose of protecting, or refusing to give testimony against, any other person."

## I.

Defendant contends that, since he had previously made known his intention to decline to answer any questions involving purported criminal acts he is alleged to have committed against either or both plaintiffs, the trial court erred in allowing plaintiffs to call him to the stand. He further claims the court erred in requiring him to assert his Fifth Amendment privilege in the presence of the jury as his reason for refusing to answer questions concerning his involvement in the shooting incident. And he argues that the above-quoted instructions should not have been submitted to the jury and plaintiffs should not have been allowed to comment on his assertion of that privilege. We do not agree.

■ It is reversible error *in a criminal case* to instruct a jury that it may draw an inference of guilt from a defendant's failure to testify about facts relevant to his case. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965). And, it is undisputed that a party has the privilege not to answer questions or requests for admissions addressed to him during discovery and at trial in a civil case if the answers might incriminate him in future

criminal proceedings. *Lefkowitz v. Turley,* 414 U.S. 70, 94 S.Ct. 316, 38 L.Ed.2d 274 (1973). *See Mueller v. District Court, supra.*

However, "the Fifth Amendment does not forbid adverse inferences against parties to *civil actions* when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). (emphasis supplied). *See also Rosebud Sioux Tribe v. A. & P. Steel, Inc.,* 733 F.2d 509 (8th Cir.1984); *Olin Corp. v. Castells,* 180 Conn. 49, 428 A.2d 319 (1980); *Eldridge v. Herman,* 291 N.W.2d 319 (Iowa 1980); *Labor Relations Commission v. Fall River Educators Ass'n,* 382 Mass. 465, 416 N.E.2d 1340 (1981); *Bull v. Bull,* 634 S.W.2d 228 (Mo.App.1982); *Parker v. Hennepin County District Court,* 285 N.W.2d 81 (Minn.1979); *Tice v. Mandel,* 76 N.W.2d 124 (N.D.1956).

 Since *Baxter,* it has been clear that a party in a civil proceeding may be called for testimony even if he will be claiming the privilege. *Brinks, Inc. v. City of New York,* 717 F.2d 700 (2d Cir. 1983). If he declines to answer certain questions on Fifth Amendment grounds, it is not error to require him to invoke the privilege in the presence of the jury; and, in that event, instructions such as those given here are appropriate. *Brinks, supra.* Failure of a party who is present at the trial to answer questions based on the privilege against self-incrimination raises a strong inference that the answers would have been unfavorable and damaging to him, and comment to that effect is proper. *Eldridge v. Herman, supra.*

Defendant relies on *State v. District Court,* 426 P.2d 431 (Wyo.1967), and *Kaneshiro v. Belisario,* 51 Haw. 649, 466 P.2d 452 (1970), both of which support his position. But these cases were decided before the U.S. Supreme Court addressed the issue in *Baxter, supra.* And, following *Baxter,* this court, in *Chaffin, Inc. v. Wallain,* (Colo.App. No. 83CA0255, May 3, 1984), held that "the finder of fact in a civil case should be permitted to draw an adverse inference against a party who claims the Fifth Amendment privilege in response to discovery requests and to properly posed questions."

 The fact that exemplary damages were sought here does not change the analysis. A penalty is not being imposed solely because defendant was silent, as prohibited in *Lefkowitz v. Cunningham,* 431 U.S. 801, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977). And exemplary damages, being ancillary to a civil claim for actual damages, do not constitute a penal sanction. *See Palmer v. A.H. Robins Co.,* 684 P.2d 187 (Colo.1984).

 There were no errors in the procedures followed in this case or in the rulings and jury instructions of the trial court with regard to the privilege.

## II.

Defendant's other contention is that the trial court erred in not granting his motion for a directed verdict of dismissal because no one, including plaintiffs, was able to identify him as being involved in the shooting incident. This argument is without merit.

 Eyewitness identification is not required; circumstantial evidence is sufficient. *Irish v. Mountain States Telephone & Telegraph Co.,* 31 Colo.App. 89, 500 P.2d 151 (1972). Here, there was evidence that defendant owned the vehicle from which the shot came, that the shot was fired from a weapon similar in appearance to defendant's, that as a police officer he was required to be armed, that he was armed that day, and that he had been drinking. And an inference that he was the one who fired the shot can be drawn from his refusal to answer questions on that issue. *Baxter v. Palmigiano, supra; Chaffin, Inc. v. Wallain, supra.* This evidence was sufficient to make his involvement a jury question, and to support the verdict rendered.

Judgment affirmed.

SMITH and BERMAN, JJ., concur.